UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT PIKEVILLE

CIVIL ACTION NO. 05-188-DLB

GARY TACKETT                                                                                          PLAINTIFF

vs.                                  **MEMORANDUM OPINION & ORDER**

JO ANNE B. BARNHART, Commissioner
SOCIAL SECURITY ADMINISTRATION                                                 DEFENDANT

******************

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence.

**I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff Gary Tackett filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) payments on August 5, 2003. (Tr. 41-42, 81-83) Plaintiff alleges he became disabled from working on August 18, 2002, due to high blood pressure; a compound fracture to his left leg and ankle from a work-related logging accident, resulting in left leg pain and numbness and pain and swelling of his left shin (tr. 51, 59); constant back pain as a result of now walking with a limp (tr. 59); numbness of his left hand and fingers from pins placed in his left hand after injuries in a 1991 auto accident (tr. 73); and headaches and difficulty concentrating, along with problems with his nerves and sleeping (tr. 73, 78). Plaintiff's claim was denied initially (tr. 27-30, 86-89) and on reconsideration (tr. 32-34, 91-93). Plaintiff requested a hearing before an ALJ, which was

held on August 31, 2004, in Prestonsburg, Kentucky. (Tr. 189-221) On December 21, 2004, ALJ Gitlow ruled that Plaintiff was not entitled to disability benefits or SSI payments. (Tr. 11-19) This decision became the final decision of the Commissioner when the Appeals Council denied review on April 30, 2005. (Tr. 4-6)

On June 14, 2005, Plaintiff filed the instant action. The matter has culminated in cross motions for summary judgment, which are now ripe for review.

## II. DISCUSSION

### A. Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Secretary of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Social Security,* 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past relevant work; and Step 5, whether significant numbers of other jobs exist in the national

economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Social Security,* 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.,* 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.     The ALJ's Determination**

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (Tr. 12) At Steps 2 and 3, the ALJ found Plaintiff's problems with his left leg, hypertension, obesity, and alcoholism to be severe impairments. (Tr. 12) However, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments severe enough to meet or medically equal any listed impairment in Appendix 1, Subpart P, Regulation No. 4. (Tr. 13)

At Step 4, the ALJ found that Plaintiff retains the residual functional capacity (RFC) to perform light exertional work; that is, lifting and/or carrying 20 pounds occasionally and 10 pounds frequently. The ALJ also found that Plaintiff's ability to push/pull is limited to these same weight limits. Plaintiff's walking/standing is restricted to no more than 30 minutes at a time, and he must also be permitted to use a cane for distance walking. (Tr. 15) Nonexertionally, Plaintiff must avoid repetitive use of his left leg and cannot operate machinery involving use of that leg. He is restricted from climbing ladders, ropes, or scaffolds, from working on uneven terrain, from crawling or kneeling, and must avoid vibration, working at unprotected heights, or around dangerous, moving machinery. (Tr. 16) At hearing, a vocational expert (VE) testified that Plaintiff's past relevant work in the mines would be categorized as low-end semiskilled, of a medium to heavy exertion level. (Tr. 217)

3

Given this, the ALJ determined that Plaintiff could not return to his past relevant work as a coal miner because it exceeded his RFC. (Tr. 16)

The ALJ therefore proceeded to the final step of the sequential evaluation. At Step 5, the ALJ found that there were a significant number of jobs available to Plaintiff in both the national and regional economies despite his limitations. (Tr. 16) This conclusion resulted from testimony by the VE, in response to a hypothetical question assuming an individual of Plaintiff's age (39 at the time of the hearing and so a "younger" individual), education (ninth grade, "limited" education), past relevant work experience, and RFC. The VE testified that Plaintiff could obtain employment at the light level as an office helper or handpacker; and at the sedentary level as an assembler or bench work laborer. (Tr. 219) Since these are positions available in significant number in both the regional and national economies, the ALJ concluded Plaintiff was not disabled under the Act. (Tr. 18)

**C.     Analysis**

In this appeal, Plaintiff's challenges are directed to what he characterizes as the ALJ's refusal to follow the recommendations of Dr. Robert Nickerson, and his refusal to impose restrictions based upon Plaintiff's subjective pain complaints. In response, the Commissioner submits that the ALJ properly reviewed the record medical evidence, including that offered by Dr. Nickerson, and acted within his authority in assessing Plaintiff's credibility, including his complaints of disabling pain.

An ALJ is required to review medical evidence and weigh medical opinions in accordance with the regulations. 20 C.F.R. §§ 404.1527, 416.927. Plaintiff takes issue with the ALJ's weighing of Dr. Nickerson's opinions. Dr. Nickerson examined Plaintiff at the request of the ALJ presiding over Plaintiff's state workers' compensation claim and

4

prepared a report dated January 6, 2004 (tr. 172-76); he is not a treating physician. Therefore, the ALJ's explanation as to his consideration of and weight to be given Dr. Nickerson's opinions does not fall within the "treating physician rule." Nevertheless, the regulations do call for the ALJ to evaluate medical opinions, from whatever source, by considering factors such as whether the opinion source examined the claimant, length and extent of treatment relationship if one existed, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the source. 20 C.F.R. §§ 404.1527(d), 416.927(d); *see also Wilson v. Comm'r of Social Sec.,* 378 F.3d 541, 544 (6th Cir. 2004).

> Unless the treating source's opinion is given controlling weight, the [ALJ] must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist, *as the [ALJ] must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.*

*Id.* §§ 404.1527(f)(2)(ii), 416.927(f)(2)(ii) (emphasis added).

A review of the ALJ's decision in this case reveals that he did, in fact, appropriately discuss the opinions offered by examining physician Nickerson. As to restrictions, Dr. Nickerson opined that Plaintiff should avoid walking on uneven terrain, climbing ladders, vibration to the left leg, and crawling/kneeling; avoid operating machinery requiring repetitive use of his left leg; should be allowed to go from a standing to a seated position every 15 to 30 minutes as needed for pain control; should not lift in excess of 25 pounds maximum, 20 pounds occasionally, and 10 pounds frequently; and should not carry in excess of 25 pounds or push or pull more than 50 pounds on wheels. (Tr. 176) After

5

considering all of the record evidence, the ALJ determined Plaintiff has the residual functional capacity to:

> lift and/or carry 20 pounds occasionally and 10 pounds frequently. He can push/pull only to the weight limits noted. He should not stand/walk for more than 30 minutes at a time. He must be permitted to use a cane for distance walking. Nonexertionally, the claimant should avoid repetitive use of the left leg.... Because of the claimant's left leg fracture, he should not operate machinery involving the use of the left leg. He should not climb ladders, ropes or scaffolds or work on uneven terrain.... He should not crawl or kneel.... The claimant should avoid exposure to vibration.... Because of the claimant's complaints of dizziness and hypertension, he should avoid work at unprotected heights or around dangerous, moving machinery.

(Tr. 15-16) A careful review and comparison of the ALJ's RFC and Dr. Nickerson's opinions shows that the ALJ adopted virtually all of Dr. Nickerson's restrictions, despite Plaintiff's protests to the contrary. Each of the restrictions he opined is included in the RFC, with the exception, according to the Plaintiff, of being able to change positions from a standing to a seated position every 15 to 30 minutes as needed for pain control. Plaintiff maintains it was error for the ALJ to refuse to follow this stand/sit option.

The ALJ characterizes this restriction opined by Dr. Nickerson as being "*alternating sitting and standing every 15 to 30 minutes.*" (Tr. 15) The ALJ goes on to state that he does not accept this sitting restriction because it is not supported by any other medical evidence.

> ... I must reject the sitting limitations provided by Dr. Nickerson. Nothing in the treatment notes or clinical evaluations support any sitting limitations. Even the claimant testified at the hearing that he sat for one hour coming direct to the hearing. Even Dr. Templin, before the claimant had fully recovered from his leg injury, found the claimant had no sitting limitations, only that of standing and walking limits. . . .

(*Id.*) Had Dr. Nickerson in fact opined such a limitation upon Plaintiff's ability to sit, the ALJ's discussion of the nature and extent to which he accepted Dr. Nickerson's opinions, and his explanation as to why he rejected this particular restriction, comply with the

governing legal standard and are supported by substantial evidence. However, it is also arguable that no such limitation was even imposed by Dr. Nickerson. While the ALJ referred to it as a restriction to "alternate" between sitting and standing every 15 to 30 minutes, Dr. Nickerson described it as being able "to go *from a standing* to a sitting position every 15 to 30 minutes." (Tr. 176)(emphasis added). He did not state the inverse; that is, to go from a sitting to a standing position every 15 to 30 minutes as needed for pain control. The content of Dr. Nickerson's report reflects that Mr. Tackett informed him that "he is only able to *stand* for approximately 15 minutes before he starts to have a discomfort in the left posterior calf as well as over the fracture site in the left mid portion of the leg." (Tr. 173)(emphasis added). The ALJ's RFC already contains a restriction that Plaintiff cannot stand/walk for more than 30 minutes at a time, which would therefore include this interpretation of Dr. Nickerson's stand/sit option.

Plaintiff's remaining challenge goes to the ALJ's refusal to accept as credible his testimony about his disabling pain. Plaintiff says the ALJ "placed no weight upon the Plaintiff's complaints of pain, and the residual problems due to this pain." (Doc. #4, p. 9) A review of the decision suggests otherwise.

A claimant's credibility and subjective complaints of pain are reviewed by an ALJ in accordance with 20 C.F.R. §§ 404.1529 and 416.929 and SSR 96-7p. The ALJ noted these governing provisions within his decision. (Tr. 13) The ALJ reviewed the claimant's appearance at hearing and his testimony as to his physical and non-physical complaints, pain levels, medical care and treatment therefor, and functional abilities and limitations in great detail. (Tr. 14) He then goes on to explain why he finds Plaintiff's credibility "to be less than good," by pointing out again in detail the inconsistencies and variances in the other

record evidence with Plaintiff's testimony. The ALJ concludes "that the claimant's allegations of disabling left leg pain, hypertension, obesity, alcoholism, depression, headaches, and neck pain are deemed excessive, not fully credible and are treated accordingly." (Tr. 14-15) Thus, the ALJ did not place no weight upon Plaintiff's complaints, but did deem them to be excessive and not completely credible.

An ALJ's determination not to accept a claimant's pain allegations outright is not, in and of itself, error. In light of the Commissioner's opportunity to observe the claimant's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524, 538 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983). Plaintiff has failed to identify any error in the legal standard utilized by the ALJ in reviewing his complaints and the other record evidence to assess his credibility. It is not for the federal district court to second guess credibility determinations, *see Garner v. Heckler,* 745 F.2d 383, 387 (6th Cir. 1984), but rather to ensure the ALJ applied the appropriate legal standard to the evidence of record in the particular case. The ALJ has satisfied that standard in his credibility assessment herein, and his finding that Plaintiff's testimony is not entirely credible is therefore entitled to deference by this Court.

### III.  CONCLUSION

Accordingly, for the reasons stated,

**IT IS ORDERED** that the decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. #4) is hereby **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. #5) is hereby **GRANTED.**

A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

Dated this 11th day of September, 2006.



Signed By:
<u>David L. Bunning</u>  DB
United States District Judge

G:\DATA\SocialSecurity\MOOs\7-05-188-Tackett.MOO.wpd